Carlton R. Mabley, Jr. and Virginia C. Mabley v. Commissioner.
Mabley v. Commissioner
Docket No. 1312-64.
United States Tax Court
T.C. Memo 1965-323; 1965 Tax Ct. Memo LEXIS 6; 24 T.C.M. (CCH) 1794; T.C.M. (RIA) 65323; December 27, 1965
*6 The petitioner, a vice president of one of the largest companies in the coal industry, was required, with other officers of the company, to attend daily luncheon conferences held in a hotel suite rented by their employer for the purpose of providing the necessary daily contact among the president of the company and the members of his staff and conserve working hours which would otherwise be consumed in daily conferences among the various executives. Held: That the meals furnished to the petitioner by the company at such conferences were furnished "for the convenience of the employer" and on the "business premises of the employer" and that therefore the fair market value of such meals is excludable from petitioner's gross income under section 119 of the Internal Revenue Code of 1954. Frederic A. Macdonald, P.O. Box 1211, Huntington, W. Va., for the petitioners. Rodney G. Haworth, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1960 in the amount of $116.25. The issue presented is whether the petitioner Carlton R. Mabley, Jr., may exclude from gross income for the taxable year 1960, under section 119 of the Internal Revenue Code of 1954, the fair market value of meals furnished to him by his employer during that year. Findings of Fact Some of the facts have been stipulated and the stipulations are incorporated herein by this reference. The petitioners are husband and wife residing in Huntington, West Virginia. Their joint Federal income tax return for the taxable year 1960 was filed with the district director of internal revenue, Parkersburg, West Virginia. Petitioner Virginia *8 C. Mabley is a party only by reason of having filed a joint return with her husband, Carlton R. Mabley, Jr., and the latter will hereinafter be referred to as the petitioner. During the year 1960 the petitioner was, and had been since 1938, an employee of Island Creek Coal Company (hereinafter referred to as the company) at its executive offices in a rented building, the Chafin Building, in Huntington. He was vice president of the company and was in charge of the sales company, a subsidiary. He was responsible and accountable for all sales activities. The company is one of the largest companies in the commercial coal industry. Prior to September 24, 1957, it was the policy of the president of the company to hold a conference once a week in a conference room in the Chafin Building with his staff, which consisted of the executive vice president, several vice presidents, and a general counsel. Each staff member had the responsibility for a particular division of activity. For example, one vice president was responsible for all financial activities, one was responsible for all operations of the company's approximately twenty mines, and one was responsible for planning and development. *9 The weekly conferences generally lasted for a full day. Usually the group was provided with luncheon at the public dining room or one of the private dining rooms of the Prichard Hotel, which is located approximately one-half block from the Chafin Building and which is the nearest hotel having dining facilities. The conferences would continue throughout the luncheon and then be resumed at the Chafin Building. There were no dining facilities in the Chafin Building, with the exception of a stand-up snack bar which would accommodate only a few people. At some time in 1957 the then president of the company, R. E. Salvati, advised his staff that he felt that the weekly meetings were interrupting the work of the company and consuming too much time during business hours. He therefore inaugurated a policy of holding daily luncheon conferences with his staff. The purpose of this policy was to provide for daily contact among the president and his staff members in order that all might keep informed as to the activities of all departments, and to avoid the necessity for many conferences among the various executives in the course of the business day. To effectuate such policy the company on *10 September 24, 1957, leased from the owner of the Prichard Hotel, for a rental of $4,800 per year, a suite suitable for dining purposes, and such lease, or an extension thereof, was in effect throughout the year 1960. Such suite consisted of a dining room, a reception room, a toilet, and a closet. It was furnished principally by the hotel but much of the furniture was owned by the company. The agreement provided that the hotel would, when requested, provide the company meals from the hotel kitchen during regular meal times at current rates charged to hotel guests. Each staff member was required to attend the daily luncheon meetings unless he was out of town or unless he had a conflict which prevented attendance. In the latter case the staff member was required to contact the president, who was the sole judge of whether such staff member should attend regardless of other circumstances, and it was only on rare occasions that a staff member was excused on the grounds of being otherwise engaged. In the event that it was determined that a staff member would not attend, it was the responsibility of such staff member to appoint a representative to attend. All staff members traveled extensively. *11 When an officer had an important matter to discuss but was going to be out of town, his absence was cleared with the president before he left and often a delegate was appointed. Under the policy in existence in 1960, the daily luncheon meeting was not held if less than 4 of the 8 or 10 staff members were able to attend, or if both the president and the executive vice president were out of town. During 1960 the scheduled working hours of the company were from 8:30 a.m. to 5:00 p.m. The luncheon meetings were held at 12:30 p.m., unless a change was necessary to meet the convenience of the president or executive vice president, and generally lasted from one to three hours. The meetings sometimes began earlier or later than 12:30 p.m. and frequently lasted longer than three hours. There were no luncheon meetings held on weekends or holidays. At the luncheon meetings staff members were expected to, and did, report on the activities of their departments which were of general interest and which had transpired since the previous meeting. They also gave advice to the president and executive vice president upon request. No luncheon meetings were held at which business matters were not discussed. *12 As a result of these luncheon conferences the president and the staff members were kept currently informed from day to day concerning the major activities of the various divisions of the company which affected the welfare of the company. In addition, the necessity for many inter-office conferences among the various officers during the course of the business day was thereby obviated, leaving the officers free to have conferences with their own staffs. At daily luncheon conferences each staff member ordered from the regular hotel menu. The meals were always served in the rented suite, and were paid for by the company. Occasionally the daily luncheon was attended by out-of-town business guests of the company and sometimes the suite was used to provide dinner for such guests. At times the suite was used for business meetings at which meals were not served. During the taxable year 1960 the company furnished petitioner 150 meals at luncheon conferences which he attended. The fair market value of such meals was $187.50. In his return for the taxable year 1960 the petitioner reported gross income of $65,443.36, which included $50,000 as salary from the company, but which did not include *13 the fair market value of the meals furnished to him. In the notice of deficiency the respondent determined that the fair market value of the meals furnished to petitioner constituted additional income to him, stating: It is determined that the fair market value of meals furnished you by your employer, Island Creek Coal Company, in the amount of $187.50 constitutes gross income under section 61(a) of the Internal Revenue Code of 1954 and is not excludable from gross income under section 119 of the Code. Opinion Section 119 of the Internal Revenue Code of 1954[1] provides that there shall be excluded from gross income of an employee the value of any meals furnished to him by his employer "for the convenience of the employer," but only if such meals are furnished "on the business premises of the employer." *14 The respondent contends that in the instant case the meals were furnished neither for the convenience of the employer nor on the business premises of the employer. He refers to the regulations, pertinent portions of which are set forth in the margin. [2]
*15 It will be noted that the regulations provide that meals furnished by an employer without charge to the employee will be regarded as furnished for the convenience of the employer if they are furnished for a substantial noncompensatory business reason of the employer, but that if they are furnished as a means of providing additional compensation (and not for a substantial noncompensatory business reason of the employer) they will not be regarded as furnished for the convenience of the employer. The respondent contends that the petitioner has failed to establish that the meals were furnished for a substantial noncompensatory business reason of his employer. He states that there is no evidence to show that the serving of the meals was necessary to the effective conduct of whatever business was transacted. He therefore takes the position that these free executive luncheons were of a fringe benefit character to the petitioner. It is our conclusion, however, that the evidence adduced clearly establishes that the meals were furnished for a substantial noncompensatory business reason of the company. *16 Such evidence shows that the company inaugurated the policy of holding daily luncheon conferences, which the petitioner and other staff members were required to attend, for the purpose of providing the necessary daily contact among the president of the company and the members of his staff and for the purpose of thereby conserving normal working hours which would otherwise by consumed by many daily conferences among the various executives in the course of the business day. The fact that such was the purpose is established by the unequivocal and uncontroverted testimony of both the petitioner and A. L. Lynn, who in 1960 was the assistant to the president and was vice president in charge of planning and development. It may be added that even if the furnishing of the meals were considered as compensation for the relinquishment by the petitioner and the other staff members of their usual right to spend their luncheon period as they pleased, the result would not be different. As pointed out in the regulations, which we think properly interpret section 119 of the Code, [3] meals furnished by an employer *17 are to be regarded as furnished for the convenience of the employer, even though furnished for a compensatory reason, if such meals are also furnished for a substantial noncompensatory business reason of the employer. We conclude that here the meals were furnished for the convenience of the employer. There remains the question of whether the meals were furnished "on the business premises of the employer." Upon the facts presented, as set forth in detail hereinabove, it is our conclusion that the rented hotel suite in which the meals were furnished was acquired and actually used for the conduct of business of the company, the furnishing of the meals being merely incidental. Accordingly, under the peculiar facts of this case we hold that such suite constituted "the business *18 premises of the employer," within the meaning of the statute. Cf. Dole v. Commissioner, (C.A. 1) 351 F. 2d 308, affirming 43 T.C. 697. We think the respondent was in error in including in the petitioner's gross income the value of the meals which were furnished to the petitioner by the company in the taxable year 1960. Decision will be entered under Rule 50. Footnotes
1. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if - (1) in the case of meals, the meals are furnished on the business premises of the employer, or (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.↩
2. Sec. 1.119-1 of the Income Tax Regulations, as amended by T.D. 6745 (approved June 30, 1964), 1964-2 C.B. 42, provides in part as follows: (a) Meals - (1) In general. The value of meals furnished to an employee by his employer shall be excluded from the employee's gross income if two tests are met: (1) The meals are furnished on the business premises of the employer, and (ii) the meals are furnished for the convenience of the employer. The question of whether meals are furnished for the convenience of the employer is one of fact to be determined by analysis of all the facts and circumstances in each case. * * * (2) Meals furnished without a charge. (i) Meals furnished by an employer without charge to the employee will be regarded as furnished for the convenience of the employer if such meals are furnished for a substantial noncompensatory business reason of the employer. If an employer furnishes meals as a means of providing additional compensation to his employee (and not for a substantial noncompensatory business reason of the employer), the meals so furnished will not be regarded as furnished for the convenience of the employer. Conversely, if the employer furnishes meals to his employee for a substantial noncompensatory business reason, the meals so furnished will be regarded as furnished for the convenience of the employer, even though such meals are also furnished for a compensatory reason. * * *
(c) Rules. (1) For purposes of this section, the term "business premises of the employer" generally means the place of employment of the employee. For example, meals and lodging furnished in the employer's home to a domestic servant would constitute meals and lodging furnished on the business premises of the employer. Similarly, meals furnished to cowhands while herding their employer's cattle on leased land would be regarded as furnished on the business premises of the employer.↩
3. See S. Rept. No. 1622, 83rd Cong., 2nd Sess., p. 190, and Conference Rept. No. 2543, 83rd Cong., 2nd Sess., p. 26-27. S. Rept. No. 1622 states in part: "Under section 119↩, as amended by your committee, there is excluded from the gross income of an employee the value of meals or lodging furnished to him for the convenience of his employer whether or not such meals or lodging are furnished as compensation."